```
 1
 2
 3
 4
 5
 6
 7
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMMIE M. SHERBAHN,<br><br>                Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant. | CASE NO.    C08-5125RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for November 7, 2008 |

      Plaintiff, Ammie M. Sherbahn, has brought this matter for judicial review of the denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Robert J. Bryan's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

      Plaintiff currently is 28 years old.[1] Tr. 28. She has a high school education, which included special education classes, and past work experience as a temporary services worker, cashier, forest worker, and landscape laborer. Tr. 25, 144, 149, 156, 180, 185, 201.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

On January 17, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as of November 3, 2000, due to reflex sympathetic dystrophy. Tr. 17, 130-32, 143. Her application was denied initially and on reconsideration. Tr. 29-30, 59, 63. A hearing was held before an administrative law judge ("ALJ") on July 15, 2005, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 577-609. On December 3, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically that she was capable of performing other jobs existing in significant numbers in the national economy. Tr. 34-43.

On June 16, 2006, the Appeals Council granted plaintiff's request for review, and remanded the matter for additional administrative proceedings with instructions to address all of the lay witness evidence in the record, give further consideration to plaintiff's residual functional capacity and, if necessary, obtain supplemental evidence from a vocational expert. Tr. 50-51. On June 13, 2007, a second hearing was held before the same ALJ, at which plaintiff, represented by counsel, appeared and testified, as did a different vocational expert. Tr. 552-76.

On July 27, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of left lower extremity hypersensitivity and dysesthesias, a cognitive disorder, a learning disorder, and a developmental personality disorder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform light work, with certain additional non-exertional limitations, which precluded her from performing her past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 17-27. Plaintiff's request for review was denied by the Appeals Council on February 13, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 8; 20 C.F.R. § 404.981.

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

1     On March 3, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.
2 (Dkt. #1-#3). The administrative record was filed with the Court on June 10, 2008. (Dkt. #10). Plaintiff
3 argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for
4 further administrative proceedings for the following reasons:

5      (a)     the ALJ erred in not finding plaintiff's complex regional pain syndrome ("CRPS")/reflex sympathetic dystrophy ("RSD") to be severe impairments;

6      (b)     the ALJ erred in assessing plaintiff's credibility;

7      (c)     the ALJ erred in evaluating the lay witness evidence in the record;

8      (d)     the ALJ erred in assessing plaintiff's residual functional capacity; and

9      (e)     the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

11 The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set
12 forth below, recommends that while the ALJ's decision should be reversed, this matter should be
13 remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral
14 argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

16     This Court must uphold the Commissioner's determination that plaintiff is not disabled if the
17 Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole
18 to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is
19 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson
20 v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than
21 a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.
22 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than
23 one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749
24 F.2d 577, 579 (9th Cir. 1984).

25 I.     Plaintiff's Date Last Insured

26     To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on
27 or before" the date her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also
28 Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security

statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was June 30, 2002. Tr. 29. Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

II.     The ALJ's Step Two Analysis

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell, 161 F.3d at 601. The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

A.      CRPS/RSD

As noted above, the ALJ found plaintiff had a severe impairment consisting of left lower extremity hypersensitivity and dysesthesias. Tr. 20. Plaintiff argues the ALJ erred in not finding his CRPS/RSD to be a severe impairment as well, asserting that contrary to evidence in the record that she has that condition, the ALJ merely noted she carried "a questionable diagnosis" of RSD. Id. Although the undersigned agrees there is stronger evidence of the presence of CRPS/RSD in the record than found by the ALJ, that evidence does not establish such a diagnosis resulted in an impairment which had more than a minimal effect on plaintiff's ability to perform basic work activities.

In early February 2001, Scott Woll, M.D., diagnosed plaintiff with "[p]lantar fascitis on the left with early RSD." Tr. 322. Dr. Woll stated that because plaintiff did "not want to have an injection," he

would "keep her off work another 2 weeks and then at that time," they would "shoot for at least 4 hr days and then progress that over the next several weeks." Id. This statement fails to show more than a minimal effect on plaintiff's ability to work for three reasons. First, Dr. Woll did not provide an opinion as to any specific work-related limitations. Second, Dr. Woll stated he was taking plaintiff off part-time work for only two weeks, and apparently off full-time work for at most a few weeks. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months). Third, it appears the sole reason Dr. Woll limited her to even this extent was because she refused an injection.

As pointed out by plaintiff, in late February 2001, J. Bruce Bell, M.D., diagnosed her with a "[s]oft tissue injury with lumbosacral strain syndrome, probable complex regional pain syndrome." Tr. 382. As with Dr. Woll, however, he gave no opinion as to any specific work-related limitations stemming from his diagnosis. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability). Dr. Bell diagnosed plaintiff with CRPS in early March 2001, as well, but, again, did not opine as to her ability to work Tr. 377. The same is true with respect to all of the other such diagnoses Dr. Bell made. See Tr. 359, 361, 363, 369, 371, 373, 375. Indeed, Dr. Bell stated plaintiff's CRPS was "successfully treated with epidural blocks" in late April 2001 (Tr. 373), and was "resolving" in early June 2001, and "slowly resolving" in mid-August 2001 (Tr. 369, 371). While he noted that plaintiff did have "an off-work slip given for another 3 months" in mid-October 2001, once more, that time period is far shorter than is required to establish the existence of a disabling impairment, and, again, no specific work-related limitations were given. Tr. 367.

Douglas A. Thompson, M.D., also suspected plaintiff had "a component of complex regional pain syndrome type I RSD involving the left foot" in mid-March 2001, but he did not limit her ability to work in any way because of that diagnosis. Tr. 306-07. In early April 2001, Dr. Thompson also noted plaintiff's pain resulting therefrom had been "treated and decreased by previous epidural steroid injection procedure." Tr. 297-98. Samuel E. Coor, D.O., diagnosed plaintiff with "[p]ossible complex regional pain syndrome (reflex sympathetic dystrophy)" in early October 2004, but he did not offer this diagnosis in any of his subsequent progress notes, and other than a self-report from plaintiff regarding complaints of

REPORT AND RECOMMENDATION
Page - 5

periods of worsening gait and his own findings of "a mildly altered gait," he also did not opine as to any significant work-related limitations. Tr. 447, 451, 508-09.

Plaintiff was examined in mid-September 2006, by Umang Sharma, M.D., who diagnosed her with "'[n]erve damage,'" which "probably" represented RSD "with some decreased strength testing, which is not consistent over exams, and asymmetric sensory examination." Tr. 483. Nevertheless, Dr. Sharma did not find any work-related limitations, concluding specifically that:

> . . . The number of hours that the claimant could be expected to stand, walk and sit in an eight-hour day is without restriction.
>
> There are no medically necessary assistive devices at this time.
>
> The amount of weight that the claimant could lift and carry is without restrictions.
> There are no postural or manipulative limitations.
>
> There are no relevant visual, communicative, or workplace environmental limitations.
> . . .

Id.; see also Tr. 484-87. Lastly, in late September 2006, John J. Miller, M.D., stated that he was "unsure regarding the diagnosis of RSD." Tr. 517. In late May 2007, Dr. Miller noted that plaintiff was diagnosed with RSD (Tr. 526), but he himself did not make that diagnosis. Accordingly, the medical evidence in the record does not support a finding that to the extent she had CRPS/RSD it was a severe impairment, and, as such, the ALJ did not err in failing so find.

B. <u>Post Traumatic Stress Disorder and Adjustment Disorder</u>

The ALJ also found plaintiff had severe impairments consisting of a cognitive disorder, a learning disorder and a developmental personality disorder. Tr. 20. Plaintiff argues the ALJ erred in failing to find her PTSD and adjustment disorder were severe impairments as well. In so arguing, plaintiff relies on the report completed by Kathleen S. Mayers, Ph.D., who conducted a psychological evaluation of her in early October 2006. Dr. Mayers diagnosed plaintiff with PTSD, an adjustment disorder with anxiety, borderline intellectual functioning, and a global assessment of functioning ("GAF") score of 52. Tr. 493. Dr. Mayers found plaintiff's math skills also were borderline and her prognosis to be "fair to poor," opining further as follows:

> . . . Her judgment, reasoning and understanding are fair. Her memory skills are fair. Her concentration and task persistence are good. Her social skills are fair. Her adaptability to a work-like situation is limited because of her borderline intellectual skills and chronic pain problems.

1  Id. At the same time, Dr. Mayers completed a medical source statement of ability to do work-related
2  mental activities, in which she found plaintiff moderately limited in her ability to: interact appropriately
3  with the public, supervisors and co-workers, and respond appropriately to work pressures in a usual work
4  setting and to changes in a routine work setting. Tr. 497. Dr. Mayers apparently attributed these moderate
5  limitations to plaintiff's PTSD and anxiety. Id.

6  The ALJ summarized Dr. Mayer's findings and diagnoses in his decision. Tr. 20-21. Although the
7  ALJ did not state expressly what weight he was giving to the PTSD and adjustment disorder diagnoses and
8  findings related thereto, clearly he did not agree with Dr. Mayers's assessment, as he did not find them to
9  be severe impairments. Defendant argues the ALJ properly did not accord full weight to that assessment,
10 because Dr. Mayers provided it more than four years after the expiration of plaintiff's insured status. In
11 addition, defendant asserts it is plaintiff's burden to prove her PTSD and adjustment disorder had become
12 severe prior to her date last insured. The undersigned agrees.

13 Medical reports "containing observations made after the period for disability are relevant to assess
14 the claimant's disability" during that period. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); see
15 also Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir. 1975). Because such reports "are inevitably
16 rendered retrospectively," however, they "should not be disregarded solely on that basis." Smith, 849 F.2d
17 at 1225 (citing Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985)). On the other hand, "claimants who
18 apply for benefits for a current disability after the expiration of their insured status" will be entitled to
19 them only if they can "prove that the current disability has existed continuously since a date on or before
20 the date that their insurance coverage lapsed." Flaten, 44 F.3d at 1462.

21 Although the ALJ did not specifically state he was rejecting Dr. Mayers's assessment on the basis
22 that it was provided after the relevant time period, he did expressly set forth all of the impairments he
23 found to have become severe through plaintiff's date last insured. Tr. 20; see Magallanes v. Bowen, 881
24 F.2d 747, 755, (9th Cir. 1989) (court may draw specific and legitimate inferences from ALJ's opinion).
25 Plaintiff argues the question as to whether an impairment is so severe as to cause disability is not relevant
26 at step two of the sequential disability evaluation process, because the issue of "severity" is not involved
27 with the ultimate determination of disability. However, plaintiff misses the point. The issue here is what
28 her condition was prior to or as of her date last insured. That restriction applies both to the determination
at step two and to the ultimate determination of disability, whether made at that step or subsequently. As

1  such, Dr. Mayers's assessment lacks relevance in this matter precisely because it was provided several
2  years after plaintiff's date last insured, and because no indication was given therein that the assessment
3  applied to other than her condition at the time the evaluation was conducted.

4  Indeed, a neuropsychological evaluation performed by another examining psychologist, John B.
5  Powell, Ph.D., in late July 2003, much closer to plaintiff's date last insured, failed to produce a diagnosis
6  of either PTSD or an adjustment disorder, with or without anxiety. Tr. 476. In addition, plaintiff's GAF
7  score at the time was 65, indicating plaintiff had "[s]ome mild symptoms," but was "generally functioning
8  well." Id. Dr. Powell, furthermore, found "no indications . . . of any cognitive or emotional deficits that
9  might impair" plaintiff's ability to care for her child, opined that she had "no difficulty concentrating or
10 paying attention" and concluded that she "clearly" had "the capacity to maintain the pace and persistence
11 needed for competitive employment." Id.

12 III.     The ALJ's Assessment of Plaintiff's Credibility

13 Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d
14 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749
15 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is
16 based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a
17 claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as
18 long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148
19 (9th Cir. 2001).

20 To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for
21 the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must
22 identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.;
23 Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is
24 malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."
25 Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v.
26 Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

27 In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility
28 evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

Here, the ALJ assessed plaintiff's credibility as follows:

> My conclusion that the claimant lacks credibility is based on the rationale in the prior decision. That rationale is further supported by the current medical evidence which shows normal examination findings other than inconsistent strength testing, a normal EMG study, and a generally normal MRI. The claimant's current testimony, with her description of extreme signs and symptoms, is not supported by the medical evidence.

Tr. 24. In his prior decision, the ALJ discounted plaintiff's credibility for the following reasons:

> . . . The medical record and its objective findings failed to support the degree of impairment that the claimant alleged. For instance, physical therapist Shona Woods reported in 2001 that the claimant was able to stand for one minute on her left leg and perform toe raises. Her muscle strength was 5/5 (Ex. 3F-1).
>
> And as noted in a chart note from Dr. Bell, the claimant did not evidence any wasting, weakness, fasciculations or atrophy in January 2002, despite her complaints (Ex. 6F-8). In May 2003, Howard Quint, M.D., declared that the claimant was able to heel/toe walk with excellent balance (Ex. 9F-4).
>
> While the claimant has pain, she has not established that her pain prevents all work activity. As noted by Dr. Bell in April 2002,
>
>> "I explained to the patient that I do not think she is going to get much better. She is going to have to live with this the best way that she can." (Ex. 6F-2).
>
> The doctor did not inform that claimant that she was incapable of work activity.
>
> This case is a "pain case" without any objective support or etiology for the limitations alleged by the claimant. Her persistent complaints of swelling in her legs have been unaccompanied by any definitive diagnosis. Even reports of color and temperature changes in her foot have been intermittent rather than consistent, thereby failing to provide clear indicia of reflexive sympathetic dystrophy. The rather normal medical findings also provide no basis for the claimant's allegations of a need to nap frequently during the day. The fact that she uses over the counter medications suggests a pain level that is less than that alleged.
>
> As a single parent responsible for a three year old child, the claimant is performing at physical and mental levels that she perhaps does not recognize. Her recitation of her daily activities is also inconsistent with her allegation of disability.

Tr. 39-40.

Plaintiff argues the ALJ erred in discounting her credibility on the basis that her testimony was not consistent with the medical evidence in the record. However, the Ninth Circuit specifically has held that a determination that a claimant's symptoms and complaints are "inconsistent with clinical observations" can

satisfy the clear and convincing requirement. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues that "conflicting evidence in the medical record is not unusual in cases of RSDS [Reflex Sympathetic Dystrophy Syndrome] due to the transitory nature of its objective findings and the complicated diagnostic process involved." <u>See</u> SSR 03-2p, 2003 WL 22399117 *5. This language, though, still does not eviscerate the ability of an ALJ to properly discount a claimant's credibility if the medical evidence in the record as a whole does not support the symptoms and complaints alleged by the claimant. In any event, as discussed above, there was no error on the part of the ALJ in this case for failing to find plaintiff's CRPS/RSD to be a severe impairment. As such, plaintiff's reliance on SSR 03-2p here is misplaced.

Plaintiff further asserts the Commissioner repeatedly has stressed that a finding of disability need not be based on medical evidence alone. Citing to <u>Smolen</u>, 80 F.3d at 1281-82, plaintiff argues that once a claimant has established the existence of a medically determinable impairment, a disability determination may be established solely on testimony or observations of lay witnesses. Rather, plaintiff asserts, <u>Smolen</u> requires that the claimant merely show the existence of a medically determinable impairment that could reasonably be expected to cause some degree of the symptoms alleged. Plaintiff argues, therefore, she is not required to show her impairment could be expected to cause the severity of symptoms being alleged, and, accordingly, her credibility cannot be discounted because the objective medical evidence does not support that level of severity.

This, however, is an incorrect reading of Ninth Circuit law in this area. As noted above, the Ninth Circuit has recognized the validity of discounting a claimant's subjective complaints because they are not consistent with the objective medical evidence in the record. The only limitation on using this as a basis for discounting a claimant's credibility, is that the claimant's pain testimony may not be rejected "<u>solely</u> because the degree of pain alleged is not supported by objective medical evidence." <u>Orteza v. Shalala</u>, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir.1991) (<u>en banc</u>)) (emphasis added); <u>see also</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir.2001); <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989). Indeed, the Ninth Circuit in <u>Smolen</u> explicitly recognized this when it concluded that "the ALJ may not reject subjective symptom testimony . . . <u>simply</u> because there is no showing that the impairment can reasonably produce the degree of symptom alleged." 80 F.3d at 1282

(emphasis added).

Notwithstanding plaintiff's error here, the undersigned finds the ALJ did not properly rely on this reason for discounting plaintiff's credibility, because none of the other reasons the ALJ provided for not finding her credible are neither clear nor convincing. The only reason the ALJ provided in his most recent decision for discounting plaintiff's credibility were the inconsistencies between her subjective complaints and the objective medical evidence in the record. In his prior decision, the ALJ provided two other reasons for discounting it, but neither of them withstand scrutiny.

The ALJ's second reason for discounting plaintiff's credibility was that she used "over the counter medications," which suggested a pain level that was less than that alleged. Tr. 40. The failure to assert a good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation). It is true that the record contains progress notes indicating plaintiff was taking no medications or only over-the-counter medications at times, and rejected an epidural steriod injection on at least one occasion. See Tr. 315, 322-23, 331, 433, 464, 508. Other progress notes, however, clearly show she also was prescribed much more powerful pain medications, and subsequently received more than one epidural injection. See Tr. 294, 297-99, 306-08, 375, 377-78, 450, 478, 488, 514, 516, 523-24, 528-29, 541-42.

The third reason the ALJ gave for discounting plaintiff's credibility was that "[a]s a single parent responsible for a three year old child," she performed "at physical and mental levels that she perhaps" did not recognize, and that "[h]er recitation of her daily activities" was "inconsistent with her allegation of disability." Tr. 40. To determine whether a claimant's symptom testimony is credible, the ALJ may consider that claimant's daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily

REPORT AND RECOMMENDATION
Page - 11

transferable to a work environment." Id.

The undersigned agrees with plaintiff that the evidence in the record does not support the ALJ's statement regarding her ability to care for her child. It is not even clear what level of physical and mental abilities her responsibility for caring for her child evidenced. Indeed, the record fails to establish that plaintiff performed any parenting duties at a level indicative of an ability to perform full-time work-related activities. See Tr. 195, 197, 200, 210, 225, 236, 587-89. The same is true with respect to her other reported activities of daily living. See Tr. 165-66, 169, 195-97, 200, 227, 232, 236, 584-89, 600-01.

IV. The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

A. Plaintiff's Mother

Plaintiff's mother, Trudy Ivie, reported her observations of plaintiff's ability to function mentally and physically. Tr. 209-10, 234-37. With respect to those observations, the ALJ stated:

> The claimant's mother, Trudy Ivie, reported in February 2003 that the claimant could walk for short periods if she wore an ankle brace, that she had difficulty lifting her 25-pound son, and that she had comprehension and spelling problems (12E). In July 2005 Ms[.] Ivie reported that the claimant's "mental and emotional condition has been her condition always, her physical pain and limitations have been since her accident." She reported that the claimant did light housework, such as sweeping, dishes, and taking out trash if not too heavy. She shopped for herself and cooked for herself. She could stand/sit 15-30 minutes and walk a quarter of a mile. She took frequent rests, did not do any heavy lifting or frequent bending, and could not be on her knees for more than a couple of minutes (19E).
>
> The report at Exhibit 19E was completed more than three years after the claimant's insured status expired. I note that the mother has a secondary gain interest, as she is supporting her daughter. I also note that the limitations described by the mother in July 2005 are more restrictive than the claimant's February 2002 report and her testimony at the first hearing. The mother was not specific as to the causes for the claimant's

REPORT AND RECOMMENDATION
Page - 12

> limitations and was vague and general as to the time periods, without distinguishing between the periods before and after June 2002 when the claimant's insured status expired. Ms[.] Ivie also asserts that the claimant is cognitively impaired, but the evidence shows that the claimant graduated from high school with a 2.10 GPA and a mix of As, Bs and Cs. She did have a couple of terms with very low grades (1E/4). Finally, Ms. Ivies' [sic] reports are not supported by the medical evidence of record. For the above reasons, I give limited weight to her report.

Tr. 24. Plaintiff argues the ALJ erred in rejecting Ms. Ivie's reports for these reasons. Although not all of the reasons the ALJ provided for discounting Ms. Ivie's reports are valid, the undersigned finds at least two of them to be germane to her and thus upholds the ALJ's determination here.

First, the ALJ incorrectly rejected Ms. Ivie's July 2005 report on the basis that it was completed more than three years after plaintiff's insured status had expired, at least with respect to her observations of plaintiff's pain and physical limitations. This is because in that report, Ms. Ivie expressly stated plaintiff's pain and physical limitations began in November 2000. Tr. 235, 237. For the same reason, the ALJ's statement that Ms. Ivie "was vague and general as to the time periods, without distinguishing between the periods before and after June 2002," is erroneous as well. As just noted, Ms. Ivie reported that the pain and limitations she observed plaintiff have began in November 2002, implying that plaintiff has had them since prior to her date last insured.

The undersigned also agrees with plaintiff that the substantial evidence in the record fails to support the ALJ's finding that Ms. Ivie has a secondary gain interest here. While Ms. Ivie did report that plaintiff lived with her (Tr. 209), plaintiff is correct in noting that the record is devoid of specific evidence showing Ms. Ivie was supporting her daughter. Even if it reasonably could be assumed from the fact that plaintiff lives with her that Ms. Ivie is providing support in the form of food and shelter, there still is no evidence that she desires to see plaintiff obtain disability benefits so as to relieve her of even that financial burden. This too, then, is not a valid reason for rejecting Ms. Ivie's reports.

The fact that Ms. Ivie may not have been specific as to the causes of plaintiff's limitations also is not a valid reason for rejecting her reports. A lay witness is not required to explain or point to the causes of a claimant's limitations in order for that witness's observations to be accepted as valid. In addition, Ms. Ivie did state plaintiff's pain and physical limitations had existed since her accident in November 2000, thereby at the very least implying that the accident was the cause thereof. The ALJ also pointed to a GPA of 2.10 containing a mix of A's, B's and C's contradicted Ms. Ivie's report that plaintiff was cognitively

impaired. But a 2.10 GPA is not extraordinarily high to say the least, and it is unclear in what classes or under what circumstances plaintiff received those grades. The record, furthermore, indicates that plaintiff participated in special education classes, had borderline to low average intellectual functioning consistent with a history of learning disabilities, and, as noted by the ALJ himself, there were times when plaintiff did receive "very low grades." See Tr. 149, 185, 473.

Nonetheless, the ALJ did note that the limitations described by Ms. Ivie were more restrictive than those reported by plaintiff around the time of her date last insured and testified by her at the first hearing in mid-July 2005. This is true at least in regard to the reported physical limitations involving lifting, carrying, walking, standing and sitting, although plaintiff's testimony at the first hearing is more similar with respect to her alleged limitations in walking and sitting. See Tr. 164-65, 195-96, 210, 235-36, 585-86. Plaintiff's self-reports from the period closer to her date last insured, however, are likely to be more accurate than her testimony from three years later. As such, the undersigned finds the discrepancies between her own reports from that time and those of her mother constitute a valid reason for discounting the latter's credibility.

The ALJ, in addition, correctly noted that the substantial objective medical evidence in the record fails to support the limitations, both physical and mental, reported by Ms. Ivie. For example, the majority of the medical opinion sources in the record found plaintiff to have far less severe physical limitations, at least in terms of her ability to perform work-related activities, than were reported by Ms. Ivie. See Tr. 427-28, 436-37, 439-40, 443, 467, 483-85. The record does contain opinions from two physicians who felt plaintiff's physical limitations posed significant problems with respect to her ability to perform full time work, neither physician was able to base that opinion on objective medical evidence. See Tr. 477, 526. Similarly, the objective medical evidence in the record concerning plaintiff's mental capabilities are far less severe overall than reported by Ms. Ivie. See Tr. 476, 493, 495, 497.

    B.    <u>Plaintiff's Stepfather</u>

Plaintiff's step-father, Danny C. Ivie, also reported his observations of plaintiff's limitations (Tr. 230-33), with respect to which the ALJ found as follows:

> The claimant's stepfather, Danny Ivie, reported in July 2005 that her problems began in 2000 after she was hit by a motor vehicle. He stated that the claimant can walk 20 minutes and sit 20 minutes, and that she is in pain all day. She lies down several times a day. She has problems with comprehension of written and spoken instructions. She

> can finish tasks that she has started unless too much is going on. Mr. Ivie stated that
> the claimant's leg swells and changes color, becoming very red (18E). Again, this
> statement was completed more than three years after the claimant's insured status
> expired. I accord limited weight to Mr. Ivie's report for the same reasons I discount
> Ms. Ivie's report.

Tr. 24. Plaintiff challenges the ALJ's findings here as well. However, as discussed above, the ALJ did provide several invalid bases for rejecting Ms. Ivie's reports. For the same reasons, those bases are not valid with respect to Mr. Ivie's report. Also as discussed above, the ALJ set forth two germane bases for rejecting Ms. Ivie's reports, namely, inconsistencies between those reports and both plaintiff's prior self-reports regarding her physical limitations and the objective medical evidence in the record. These two reasons apply equally to the statements in Mr. Ivie's report, and therefore the ALJ properly discounted that report here as well.

### C. Plaintiff's Friend

A third lay witness report was provided by plaintiff's friend, Michelle D. Michaels (Tr. 225-28), in regard to which the ALJ found:

> In July 2005 a friend, Michelle Michaels, reported that she has known the claimant
> three plus years and that she sees her one to two times a month. Ms. Michaels stated
> that the claimant can sit 30 minutes, and walk a quarter of a mile. She has problems
> reading or understanding language beyond a third or forth [sic] grade level.
>
> Ms. Michaels stated that she has observed the claimant "exhibiting great pain for no
> apparent reason." She stated that the claimant loves to walk with her son but cannot do
> so for more than a few blocks. She lies down three to four times a day. She does not
> get a chance to complete tasks and also has trouble finishing tasks (17E). Ms. Michaels
> knew the claimant only a few months before her insured status expired. I give no
> weight to her report.

Tr. 25. Plaintiff argues the fact that Ms. Michaels knew plaintiff for only a few months before her insured status expired was not a germane reason for rejecting her report. The undersigned agrees. The ALJ gives no explanation for why he believed observations made over a period of a few months could not provide an accurate description of a claimant's limitations. Indeed, given that plaintiff's date last insured was June 30, 2002, and Ms. Michaels reported in July 2005, that she had known plaintiff for "3+ years," is certainly is conceivable that she had observed plaintiff for close to a year prior to her date last insured. Accordingly, the undersigned finds the ALJ erred here.

## V. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of

the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> **. . . [T]hrough the date last insured, the claimant had the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, sit six hours in an eight hour day, and stand/walk six hours in an eight hour day. She could not perform strenuous pushing and pulling with the lower extremities. She could occasionally climb stairs and never climb ladders. She could occasionally balance, stoop, kneel, crouch and crawl. She needed to avoid heights and hazards. She could perform simple repetitive tasks in a non-public setting with limited contact with co-workers and limited supervision, in a stable work environment.**

Tr. 22 (emphasis in original). Plaintiff argues the above RFC assessment is erroneous because the ALJ failed to perform a proper step three analysis, failed to properly assess her credibility and failed to properly evaluate the reports of the lay witnesses in the record. As discussed above, the ALJ did not conduct an improper step three analysis. Nor does plaintiff point to, or the record contain, any specific medical evidence supporting inclusion in the ALJ's residual functional capacity assessment of any additional limitations stemming from her alleged CRPS/RSD, PTSD or adjustment disorder. On the other hand, also as discussed above, the ALJ did err in assessing plaintiff's credibility and in evaluating the report of one of the lay witnesses in the record, Ms. Michaels. Accordingly, it is not clear that the ALJ's RFC assessment accurately describes all of plaintiff's limitations.

VI.     The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the second hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially similar limitations to those the ALJ included in his assessment of plaintiff's RFC. Tr. 572-73. In response to that hypothetical question, the vocational expert testified that there were other jobs which an individual with those limitations could do. Tr. 573-74. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 26-27. Plaintiff argues that given the ALJ's erroneous RFC assessment, the hypothetical question he posed to the vocational expert did not include all of her limitations. The undersigned agrees that given the errors discussed above, it is not clear whether that hypothetical question accurately describes all of plaintiff's limitations. However, the undersigned disagrees that plaintiff should have been found to be disabled at step five based on her alleged need to lie down several times during the day, since it also is unclear whether the record supports such a limitation, particularly in light of the lack of objective medical evidence supporting that and her other claimed physical limitations.

VII. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."

Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to plaintiff's credibility, the lay witness evidence in the record, plaintiff's residual functional capacity, and plaintiff's ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

It is true that the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). The Court of Appeals in Connett went on to state, however, it was "not convinced" the "crediting as true" rule was mandatory. Id. Thus, at least where findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears the courts "have some flexibility in applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (applying "crediting as true" rule, but noting its contrary holding in Connett).[3] Such is the case here for the reasons discussed above.

It also is true that where lay witness evidence is improperly rejected, it may be credited as a matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were

---

[3]In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. Benecke, 379 F.3d at 594. The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id. It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.

1 sufficient to meet or equal listed impairment). Again, though, as noted by the Ninth Circuit, the courts do

2 have "some flexibility" in how they apply the "credit as true" rule. <u>Connett</u>, 340 F.3d at 876. Further,

3 <u>Schneider</u> dealt with the situation where the Commissioner failed to cite any evidence to contradict the

4 statements of five lay witnesses regarding her disabling impairments. 223 F.3d at 976. Once more, for the

5 reasons set forth above, the undersigned finds exercising such flexibility is appropriate here.

6 Plaintiff requests that if this matter is remanded for further administrative proceedings, it should be

7 assigned to a different ALJ. The undersigned agrees that assignment to a different ALJ is appropriate here.

8 This is because the ALJ in this matter already has had two attempts to properly evaluate the evidence in

9 the record and make a valid disability determination, but has failed to do so. Accordingly, the

10 Commissioner on remand should assign this matter to a different ALJ.

## CONCLUSION

12 Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff

13 was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for

14 further administrative proceedings in accordance with the findings contained herein.

15 Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

16 the parties shall have ten (10) days from service of this Report and Recommendation to file written

17 objections thereto. <u>See also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

18 objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit

19 imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 7,**

20 **2008**, as noted in the caption.

21 DATED this 14th day of October, 2008.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 19